

Clarence Maddox
Clerk, U.S. District Court
299 E. Broward Blvd
Fort Lauderdale FL 33301

September 14, 2001

RE: 00-15187-CC     USA v. Alipio Herrera
DC DKT NO.: 00-06137 CR-WPD

TO:     Clarence Maddox

CC:     David Michael Tarlow

CC:     Thomas F. Almon

CC:     Maria Beguiristain

CC:     Anne Ruth Schultz

CC:     Kathleen M Salyer

CC:     Theresa M. Van Vliet

CC:     Administrative File



# United States Court of Appeals

Eleventh Circuit
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

**Thomas K. Kahn**
Clerk

In Replying Give Number
Of Case And Names of Parties

September 14, 2001

Clarence Maddox
Clerk, U.S. District Court
299 E. Broward Blvd
Fort Lauderdale FL 33301



RE: 00-15187-CC      USA v. Alipio Herrera
DC DKT NO.: 00-06137 CR-WPD

The enclosed certified copy of the judgment and a copy of this court's opinion are hereby issued
as the mandate of this court.

Also enclosed are the following:
    Original Exhibits, consisting of: two psi
    Original record on appeal or review, consisting of: seven volumes

Please acknowledge receipt on the enclosed copy of this letter.

A copy of this letter and the judgment form, but not a copy of the court's opinion or Rule 36-1
decision, is also being mailed to counsel and pro se parties. A copy of the court's opinion
or Rule 36-1 decision was previously mailed to counsel and pro se parties on the date it was issued.

Sincerely,

THOMAS K. KAHN, Clerk

Reply To: James Delaney (404) 335-6113

Encl.

MDT-1 (1-2001)

# United States Court of Appeals
### For the Eleventh Circuit





No. 00-15187

District Court Docket No.
00-06137-CR-WPD

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT

Aug 14, 2001

THOMAS K. KAHN
CLERK

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ALIPIO HERRERA,
JESUS JESSE VEGA,

Defendants-Appellants.

FILED by _____ D.C.

SEP 1 8 2001

CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA. FT. LAUD.

A True Copy - Attested:
Clerk, U.S. Court of Appeals
Eleventh Circuit

By: _____
Deputy Cl.
Atlanta, GA.

--------------------------------------------------------------------
Appeals from the United States District Court
for the Southern District of Florida
--------------------------------------------------------------------

## J U D G M E N T

It is hereby ordered, adjudged, and decreed that the attached opinion included herein by
reference, is entered as the judgment of this Court.

Entered:      August 14, 2001
For the Court:   Thomas K. Kahn, Clerk
By:   McCombs, Elaine

ISSUED AS MANDATE

SEP 1 4 2001

U.S. COURT OF APPEALS
ATLANTA, GA.

[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT

AUG 14 2001

THOMAS K. KAHN
CLERK

No. 00-15187
Non-Argument Calendar

D.C. Docket No. 00-06137-CR-WPD

UNITED STATES OF AMERICA,

FILED by _____ D.C.

SEP 18 2001

CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA. FT. LAUD.

Plaintiff-Appellee,

versus

ALIPIO HERRERA,
JESUS JESSE VEGA,

Defendants-Appellants.

Appeals from the United States District Court
for the Southern District of Florida

(August 14, 2001)

Before BIRCH, BARKETT and WILSON, Circuit Judges.

PER CURIAM:

Jesus Jesse Vega appeals his conviction and 84-month sentence imposed after

a jury found him guilty of conspiracy and attempt to commit armed robbery and

extortion, in violation of 18 U.S.C. § 1951(a). His co-conspirator, Alipio Herrera,

appeals his conviction and sentence to 72 months' imprisonment after a jury also found him guilty, in a separate proceeding, of conspiracy and attempt to commit armed robbery and extortion, in violation of 18 U.S.C. § 1951(a).

On appeal, Vega raises four issues: (1) He contends that his rights under the Confrontation Clause of the Sixth Amendment to the U.S. Constitution were violated by the introduction at trial of Herrera's post-arrest taped conversation with him; (2) He argues that the district court erred in not giving him a three-point reduction in his base offense level pursuant to U.S.S.G. § 2X1.1 because the offense was partially completed; (3) He asserts that the trial court improperly imposed a two-level upward adjustment for obstruction of justice as a result of his trial testimony; and (4) He argues that the district court erred by not awarding him credit for the time he served in state custody.

Herrera argues on appeal that the district court abused its discretion by failing to provide him with a copy of notes taken by an agent during the debriefing of the government informant whose cooperation with the police assisted them in apprehending Herrera and Vega. For the reasons set forth below, we affirm both Vega and Herrera's convictions.

## VEGA

### I.

The first issue raised by Vega is that Herrera's post-arrest taped conversation with him was introduced in violation of his Sixth Amendment confrontation clause rights. Because this objection to the tape was not raised in the district court, it is reviewed for plain error only. *See United States v. Foree*, 43 F.3d 1572, 1577 (11th Cir. 1995). As a result, Vega must prove that: (1) there was an error in the district court's ruling, (2) the error was plain, and (3) it affected his substantial rights i.e., the error was prejudicial and not harmless. *Id.* at 1578.

At trial, Vega's counsel objected to the admission of the tape based on *United States v. James*, 590 F.2d 575 (5th Cir. 1979) (en banc), which held that there must be sufficient evidence to establish a conspiracy in order for statements of co-conspirators to be admitted. The trial court overruled the objection and admitted the tape, which contained a conversation between Herrera and Vega about the robbery the two had planned. Vega now claims that the admission of the tape represents a *Bruton* violation. *Bruton v. United States* held that a defendant's Sixth Amendment right of confrontation is violated when a facially incriminating confession of a non-testifying codefendant is introduced at their joint trial even if the jury is given a limiting instruction to consider the confession only against that defendant. 391 U.S. 123, 124 (1968); *Clark v. Maggio*, 737 F.2d 471, 476 (5th Cir. 1984). Vega claims that this error was further compounded by the prosecutor's reference to the taped conversation

3

in his closing. *See United States v. Van Hemelryck*, 945 F.2d 1493, 1503 (11th Cir. 1991) (finding error especially troubling in light of prosecutor's reference to conversation in closing); *United States v. Bennett*, 848 F.2d 1134, 1142 (11th Cir. 1988) (same).

The government asserts that the taped telephone conversation between Vega and Herrera represents an admission by Vega. *Bruton*, it argues, protects a defendant "where the powerfully incriminating extrajudicial statements of a codefendant, who stands accused side-by-side with the defendant, are deliberately spread before the jury in a joint trial." *Bruton*, 391 U.S. at 135-36. Here, Vega implicates himself and the conversations are admissible under Fed. R. Evid. 801(d)(2)(A) as admissions. The other statements made were admitted by the district court under *res gestae* i.e., for the fact that they were said and not for their truth. The district court gave Vega a limiting jury instruction for the *res gestae* aspects of the conversation. Finally, in response to Vega's claim that reference to these statements in closing argument compounded the error, the government states that reference to the conversation was made based on testimony elicited by Vega. Vega is precluded from objecting to the parts of the government's closing based on testimony that he elicited. *See United States v. Parikh*, 858 F.2d 688, 695-96 (11th Cir. 1988) (holding that admission of a

4

government witness's reference to out-of-court statements when elicited by defense counsel constitutes "invited error").

Having reviewed the transcripts of the conversations admitted at trial, we find no error in the district court's admission of these tapes under the evidentiary rules. As a result, we affirm the district court's admission.

II.

Vega next contends that the district court erred on a range of sentencing issues. First, he claims that he was inappropriately denied a three-point reduction in his base offense level pursuant to U.S.S.G. § 2X1.1 because the offense was partially completed. He argues that Herrera and Abascal were stopped before reaching the robbery destination, the plan never could have been accomplished because Abascal was an informant, and Vega had tried to cancel the robbery prior to that date.

The government responds that the district court properly denied Vega's request for a three-point reduction because, contrary to Vega's assertions, he did not attempt to cancel the robbery completely, only to reschedule it for another day, and he continued to provide information to Herrera to facilitate the robbery. The government asserts that the offense was substantially completed and was on the verge of completion, but for law enforcement intervention. Thus, the government argues,

5

pursuant to the background note to U.S.S.G. § 2X1.1, a three-point deduction was not warranted.

In sentencing guidelines cases, this Court reviews the district court's factual findings for clear error and the district court's application of law to those facts *de novo. United States v. Cover*, 199 F.3d 1270, 1274 (11th Cir. 2000)(per curiam). Section 2X1.1 of the sentencing guidelines provides for a three-level reduction "unless the defendant completed all the acts the defendant believed necessary for successful completion of the substantive offense or the circumstances demonstrate that the defendant was about to complete all such acts but for apprehension or interruption by some similar event beyond the defendant's control." U.S.S.G. § 2X1.1(b)(1). This Court has held that the appellant was entitled to a three-level reduction where he neither believed that he and his co-conspirators in a money laundering conspiracy had completed all the acts necessary or were about to complete all such acts necessary for laundering the entire anticipated amount. *See United States v. Khawaja*, 118 F.3d 1454, 1458 (11th Cir. 1997).

The record shows that although Vega initially sought to renege on participation in the robbery on the scheduled date because he had become the designated driver who would be robbed, Vega called his supervisor and declined to replace the driver as he had originally agreed. Thereafter, Herrera assured Abascal that the robbery was

to continue as planned. Further, Abascal testified that Herrera had been given a description of the driver and knew the precise timing of the route. The record demonstrates that at the time Herrera and Abascal were apprehended, Herrera and Abascal had returned the defective stun gun and had obtained the inoperable firearm from Herrera's apartment. Thus, Vega, Herrera, and Abascal had taken crucial steps to effect the robbery. Consequently, when Herrera voluntarily called Vega and deceivingly declared that the robbery, "it," was done, Vega could have believed that he had completed all the acts necessary on his part to complete the robbery. Therefore, the district court did nor error in determining that Vega was not entitled to a three-level reduction under § 2X1.1(b)(1).

## III.

Vega argues that the trial court improperly imposed a two-level upward adjustment for obstruction of justice as a result of his trial testimony. Vega states that he was penalized for testifying in his own defense to the facts as he perceived them to be and by the trial court's determination that based on Mrs. Herrera's testimony, his testimony was untruthful. Vega contends that a review of Mrs. Herrera's testimony does not necessarily reveal that any planning of a robbery occurred in her presence, but that he made some comments about the movie, the money that he carried, and how easy it would be to rob a courier on his job with inside information.

7

Further, Vega argues that he should not have been penalized for testifying about the taped conversation made during the telephone call from Herrera to Vega after Herrera's arrest because he could not cross-examine Herrera about the conversation, he did not know that Herrera was informing Abascal that he had an inside partner, and the jury deliberated for seven hours before reaching a guilty determination.

This Court reviews the district court's factual findings necessary for an obstruction of justice enhancement based on perjury for clear error. *United States v. Gregg*, 179 F.3d 1312, 1316 (11th Cir. 1999), *cert. denied*, 528 U.S. 1176 (2000). Great deference is accorded to the district court's credibility determinations. *Id.*

Section 3C1.1 of the sentencing guidelines provides for a two-level adjustment to a defendant's offense level "[i]f the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the investigation, prosecution, or sentencing of the instant offense . . ." U.S.S.G. § 3C1.1. Examples of such conduct include providing materially false statements to a judge or to a law enforcement officer that significantly obstruct or impede the official investigation or prosecution of the offense. U.S.S.G. § 3C1.1, comment n.3(f), (g), (h). It is preferable that the district court make specific findings as to each alleged instance of obstruction by identifying the materially false statements individually. *United States v. Arguedas*, 86 F.3d 1054, 1059 (11th Cir. 1996) (*citing United States v. Dunnigan*,

507 U.S. 87, 95 (1993)). As to the truthfulness of Vega's testimony, the district court

stated:

> I make notes when I hear something that I think might be obstruction of justice . . . And one of the notes I made in this case was that Mr. Vega lied during his testimony. And I wrote down that he was contradicted by Ms. Herrera's testimony about the plans, and that I felt that Ms. Herrera's testimony about the plans were more credible than his testimony about the plans. Also, the taped phone call about the marijuana I felt was not truthful. And I find that both of those are material issues . . . And I realize that you can't assess obstruction of justice just because someone exercises a constitutional right to testify and the jury decides not to believe them. But when you go beyond that and specifically make assertions that aren't true, at that point I think obstruction of justice is appropriate.

(R7 at 12-13).

The district court's findings are supported by the record. Although Vega, in

his testimony, denied watching a movie with the Herreras and having a conversation

about robbing his employer, that testimony is contradicted by Mrs. Herreras'

testimony and submission of the taped telephone conversation between Vega and

Herrera. Mrs. Herrera testified that Vega told them during the movie about his job,

his route, and the money that the couriers transported. She also testified that he

commented on how easy it would be to rob his employer with that inside information.

Additionally, the district court stated that it did not believe that Vega was being

truthful about the taped telephone call from Herrera after his arrest. Accordingly, the

9

district court's determination that a two-level enhancement was warranted was not clear error.

IV.

Finally, Vega avers that the district court erred by not reducing his sentence for the time served in state custody. Vega contends that the district court failed to include in its written judgment that credit should be given for time served in state custody and failed to announce orally at sentencing that the number of days that credit should have been given for time served. The government responds that the district court lacked authority to grant Vega credit for any time served before sentencing. It argues that Vega should properly present his claim in a petition filed pursuant to 28 U.S.C. § 2241, after he has exhausted the Bureau of Prison's ("BOP") administrative remedies.

This Court reviews a district court's interpretation and application of a statute *de novo. Dawson v. Scott*, 50 F.3d 884, 886 (11th Cir. 1995). Whether a statute affects sentencing is a question of law that this Court also reviews *de novo. Id.*

18 U.S.C. § 3585(b)(1) of the Sentencing Reform Act of 1984 provides that "a defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences as a result of the offense for which the sentence was imposed." Unlike its predecessor,

19

section 3568, section 3585 no longer mentions that the Attorney General must compute the credit. The U.S. Supreme Court held, however, that it did not see how the Attorney General could avoid making that determination. *See United States v. Wilson*, 503 U.S. 329, 335 (1992). The Court determined that the Attorney General, through the BOP, has the responsibility for administering the sentence under 18 U.S.C. § 3621(a) after a district court sentences a federal offender. *Id.* Because the offender has a right to certain jail-time credit under § 3585(b), and because the district court cannot determine the amount of the credit at sentencing, the Court held that the Attorney General has no choice but to make the determination as an administrative matter when imprisoning the defendant. *Id.*. Consequently, this Court has also concluded that after a district court sentences a federal offender, the Attorney General has the responsibility for administering the sentence. *Dawson*, 50 F.3d at 889 n. 9. Accordingly, the district court did not err. Vega must present his claim to the Bureau of Prisons and exhaust his remedies there before this claim may be reviewed.

## HERRERA

11

Herrera's sole issue on appeal is whether the government disclosed all relevant material to him in compliance with the *Brady*[1] rule. He alleges that had the district court allowed him access to the notes from an agent interview with a government informant, he could have used those notes to impeach the witness and bolster his entrapment defense. Herrera further avers that failure to disclose may not be considered harmless error absent an *in camera* inspection by this court of the materials in question. *See United States v. Esposito*, 771 F.2d 283 (7th Cir. 1985).

How a district court proceeds to enforce discovery disclosure requirements is largely a matter of discretion to be reviewed in light of all the facts of the particular case at hand. *United States v. Valera*, 845 F.2d 923, 927 (11th Cir. 1988). Thus, we review only for abuse of discretion. *Id.*

After the district court's *in camera* review, it denied Herrera's request for the notes stating that "although there's a lot of information in there, I don't find that any of it is *Brady* given the extensive cross-examination that [Herrera's lawyer] did." That cross-examination included eliciting testimony about the government

---

[1] To prove a violation of the rule established in *Brady v. Maryland*, 373 U.S. 83 (1963), a defendant must demonstrate that: (1) the Government possessed evidence favorable to the defendant (including impeachment evidence); (2) that the defendant does not possess the evidence nor could he obtain it himself with any reasonable diligence; (3) that the prosecution suppressed the favorable evidence; and (4) that had the evidence been disclosed to the defense, a reasonable probability exists that the outcome of the proceedings would have been different. *Wright v. Hopper*, 169 F.3d 695, 699 (11th Cir. 1999), *cert. denied sub. nom., Wright v. Haley*, 528 U.S. 934 (1999).

12

informant's numerous criminal acts as well as the informant's current plea agreement with the government. The district court found that based on the extensive cross-examination and reviewing the notes itself, which contained information about on-going criminal investigations, that the notes did not constitute *Brady* material. Absent a specific allegation by Herrera as to what he hopes would be discovered by having the notes produced and given the overwhelming evidence to support his conviction, including numerous tapes and his own post-arrest admissions, we find that any error resulting from the district court's denial of Herrera's motion to compel was harmless.

## CONCLUSION

We conclude that there was no plain error in the admission of the taped conversations against Vega. *See Bennett*, 848 F.2d at 1142 (citing to *Chapman v. California*, 386 U.S. 18 (1967) (finding that harmless error analysis applies to *Bruton* cases)). Furthermore, the district court did not clearly err in determining that Vega was not entitled to a three-point reduction in his base offense level pursuant to U.S.S.G. § 2X1.1 for a partially completed offense and in imposing a two-level upward adjustment for obstruction of justice as a result of Vega's trial testimony. The district court's finding that Vega obstructed justice by testifying untruthfully is supported by the record, as the district court identified specifically Vega's statements

13

that it believed to be untruthful. *See Arguedas*, 86 F.3d at 1059. Moreover, the

district court did not err in failing to grant Vega credit for time served because it

lacked the authority to do so. *See Wilson*, 503 U.S. at 335-37 (holding that the

district court has no authority to grant a defendant credit for any time served in

detention before sentencing, but rather the Attorney General has the sole authority to

grant credit for time already served). Finally, we find that any error in the district

court's finding that a government agent's notes did not constitute *Brady* material and

the subsequent denial of those notes to Herrera was harmless. Accordingly, we

AFFIRM.

A True Copy - Attest
Clerk, U.S. Court of Appeals
Eleventh Circuit
By:
Deputy Clerk
Atlanta, Georgia

14